DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| ESTHER MARGARITA LIMA SUAREZ VIUDA DE YANG, Individually and as Personal Representative of the Estate of CHANG CHEOL YANG, deceased, and on behalf of BRANDON CHEOL YANG LIMA, JI HEA YANG LIMA, and CAMILA ROMINA YANG LIMA, minor children,<br><br>    Plaintiffs,<br>          vs.<br><br>MAJESTIC BLUE FISHERIES, LLC, a Delaware limited liability company, and DONGWON INDUSTRIES CO., LTD, a corporation incorporated under the laws of Korea,<br><br>    Defendants. | CIVIL CASE NO. 13-00015<br><br>**DECISION AND ORDER RE: DEFENDANT DONGWON INDUSTRIES CO., LTD.'S MOTION TO DISMISS AND COMPEL ARBITRATION AND MAJESTIC BLUE FISHERIES, LLC'S JOINDER TO DONGWON'S MOTION TO DIMISS AND COMPEL ARBITRATION** |

Before the court is Yang's Objections to Report and Recommendation Granting Defendants' Motion to Compel Arbitration filed by Plaintiffs. ECF No. 88. On July 30, 2015, the parties appeared before the court for a hearing. After reviewing the parties' submissions, and relevant caselaw and authority, and having heard argument from counsel on the matter, the court hereby accepts and adopts in part the Magistrate Judge's Report and Recommendation dated January 14, 2015 (ECF No. 85). The court hereby **DENIES** Defendant Dongwon Industries Co.,

- 1 -

1  Ltd.'s Motion to Dismiss and Compel Arbitration and **GRANTS IN PART** Majestic Blue

2  Fisheries, LLC's Joinder to Dongwon's Motion to Dismiss and Compel Arbitration for the

3  reasons stated herein.

4  **I.      CASE OVERVIEW**

5        This is a wrongful death action in which Plaintiffs seek damages for the death of Chang

6  Cheol Yang while he was on board the fishing vessel *Majestic Blue*, which sank in the West

7  Pacific Ocean on June 14, 2010.

8        **A.  Factual Background**

9        On March 23, 2010, Chang Cheol Yang ("Yang") executed an employment contract with

10  Majestic Blue Fisheries, LLC ("Majestic Blue") to serve as the Chief Engineer on board the

11  fishing vessel *Majestic Blue* ("F/V *Majestic Blue*" or "the Vessel") for a term of eighteen

12  months. Compl. ¶¶ 15-16, ECF No. 1.

13        Majestic Blue is a Delaware limited liability company and at all relevant times was the

14  record owner of the Vessel. Dongwon Industries Co., Ltd. ("Dongwon"), a Korean corporation,

15  had sold the Vessel to Majestic Blue for the sum of $10.00 in April 2008. *In The Matter of*

16  *Majestic Blue Fisheries, LLC, as Owner of The F/V Majestic Blue Petitioning for Exoneration*

17  *From or Limitation of Liability*, No. 1:11-cv-00032, 2014 WL 378556, at *10 (D. Guam July 25,

18  2014). On or about May 2008, Majestic Blue and Dongwon entered into two service contracts:

19  (1) for Dongwon to arrange and supervise dry docking and repairs, maintain the Vessel, and

20  supply equipment and parts upon the owner's request; and (2) for Dongwon to supply the crew to

21  man the Vessel. *Id*. at *11.

22        In March 2010, the F/V *Majestic Blue* arrived at the Longshan Shipyard in China to begin

23  its biannual dry docking. *Id*. at *12. The Vessel set sail on May 7, 2010, and arrived in Guam on

24  May 13, 2010, and underwent additional repairs. *Id*. at *20. On May 21, 2010, the F/V *Majestic*

- 2 -

1    *Blue* set sail from Guam to being a tuna fishing expedition with twenty-three crew members and

2    one observer. The captain was from the United States, ten crew members were from South

3    Korea, seven from the Philippines, three from Indonesia, and two from Vietnam. The observer

4    was from Palau. *Id*. at \*15.

5            On June 14, 2010, the F/V *Majestic Blue* sank in the West Pacific Ocean. *Id*. at \*40. The

6    crew abandoned ship with the exception of Captain David Hill and Yang. *Id*. at \*30.

7            **B.  Procedural History and Limitation Action**

8            On December 9, 2010, Majestic Blue filed in the District Court of Guam a complaint for

9    exoneration from and limitation of liability arising out of the sinking of the F/V *Majestic Blue*

10   ("Limitation Action"). Complaint, *In The Matter of Majestic Blue Fisheries, LLC, as Owner of*

11   *The F/V Majestic Blue Petitioning for Exoneration From or Limitation of Liability*, No. 1:10-cv-

12   00032 (D. Guam Dec. 9, 2010). On February 24, 2012, the Clerk of Court issued a Notice, which

13   directed all claimants desiring to contest Majestic Blue's right to exoneration or limitation of

14   liability to file an answer to the complaint by March 30, 2012. Notice, *In The Matter of Majestic*

15   *Blue Fisheries, LLC, as Owner of The F/V Majestic Blue Petitioning for Exoneration From or*

16   *Limitation of Liability*, No. 1:11-cv-00032 (D. Guam Feb. 24, 2012), ECF No. 40. Claimant Amy

17   Hill, the widow of Captain David Hill, filed a timely answer.

18           The Limitation Action proceeded to trial before Magistrate Judge Manibusan. The

19   Magistrate Judge concluded that Majestic Blue:

20           knew (1) the Vessel was generally unseaworthy due to its aforesaid condition, (2) knew
             specifically of the unseaworthy conditions manifesting itself at the rudder stock with an
21           excessive and constant leak, (3) knew of the incompetency of the crew which lacked
             training, experience, a common language, communication skills, and basic emergency
22           skills, and (4) knew that the Captain it provided the *Majestic Blue* was a mere figurehead-
             a ship master with no real authority. Because of its knowledge and because these were the
23           unseaworthy conditions that caused the loss, [Majestic Blue] is not eligible to limit its
             liability.

24
     *In re Majestic Blue*, 2014 WL 378556, at \*49.

1    While the Limitation Action was proceeding, on June 11, 2013, Plaintiffs filed the

2    Complaint in the instant case, alleging four claims: (I) Survival Action for Negligence for Pre-

3    Death Pain and Suffering Under the Jones Act; (II) Wrongful Death Under the General Maritime

4    Law; (III) Wrongful Death Under the Death on the High Seas Act; and (IV) Wrongful Death

5    Under the Jones Act. ECF No. 1. Due to the Limitation Action, the court ordered this case stayed

6    as to Defendant Majestic Blue.

7    On November 2, 2013, Defendant Dongwon filed its Motion to Dismiss and Compel

8    Arbitration. ECF No. 38. On August 8, 2014, the court lifted the stay of the prosecution of

9    Plaintiffs' claims against Majestic Blue. Thereafter, Majestic Blue filed its Joinder to Dongwon's

10   Motion to Dismiss and Compel Arbitration on August 25, 2014. ECF No. 68.

11   The court referred Dongwon's Motion to Dismiss and Compel Arbitration and Majestic

12   Blue's Joinder to the Motion to U.S. Magistrate Judge Joaquin V.E. Manibusan, Jr. for a Report

13   and Recommendation as to the appropriate disposition. ECF No. 76. On October 7, 2014, the

14   Magistrate Judge heard arguments on the Motion and Joinder and took them under advisement.

15   ECF No. 80. After hearing arguments, the Magistrate Judge issued the Report and

16   Recommendation on January 14, 2015. ECF No. 85. The Magistrate Judge recommends both the

17   Motion and Joinder be granted in part and denied in part. The Magistrate Judge recommends that

18   the court compel arbitration and that the action be stayed pending arbitration. *Id*. at 18. On

19   February 11, 2015, Plaintiffs filed their objections to the Report and Recommendation. ECF No.

20   88.

21   **II.    STANDARD OF REVIEW**

22   When a party files a timely objection to a magistrate judge's report and recommendation,

23   "[a] judge of the court shall make a *de novo* determination of those portions of the report or

24   specified proposed findings or recommendations to which objection is made." 28 U.S.C. §

- 4 -

636(b)(1)(C); *see Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991); *see also* Fed. R. Civ. P. 72(b)(3) (stating "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) (stating a district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions").

## III.   DISCUSSION

Plaintiffs object to the Magistrate Judge's recommendation that arbitration be compelled because: (1) no agreement to arbitrate exists; (2) the arbitration clause is null and void as against public policy; (3) equitable estoppel does not allow nonsignatory Dongwon to compel arbitration; (4) Dongwon waived any right to arbitration by seeking limitation and by delay; and (5) Majestic Blue waived any right to arbitration through its conduct in the limitation proceeding, which was inconsistent with a right to arbitration. Pls. Objection, ECF No. 88

### A.  United Nations Convention on the Recognition and Enforcement of Arbitral Awards

"It is well-settled that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Balen v. Holland America Line, Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Moreover, this federal policy favoring arbitration "applies with special force in the field of international commerce." *Id*. (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

Federal arbitration law is codified in the three chapters of Title 9 of the United States Code: (1) the Federal Arbitration Act ("FAA"); (2) the statute, commonly called the Convention Act, implementing the United Nations Convention on the Recognition and Enforcement of

- 5 -

Arbitral Awards ("Convention"); and (3) the statute implementing the Inter-American

Convention on International Commercial Arbitration, which is not relevant here. *See Rogers v.*

*Royal Caribbean Cruise Line*, 547 F.3d 1148, 1152–53 (9th Cir. 2008). The FAA applies to

proceedings brought under the Convention Act to the extent that it is not in conflict with the

Convention Act or the Convention. 9 U.S.C. § 208.

International arbitration clauses are governed by the Convention, which applies to "[a]n

arbitration agreement…arising out of a legal relationship, whether contractual or not, which is

considered as commercial[.]" 9 U.S.C. § 202. The court must compel arbitration pursuant to the

Convention if the following four jurisdictional prerequisites are satisfied:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the
> agreement provides for arbitration in the territory of the signatory of the Convention; (3)
> the agreement arises out of a legal relationship, whether contractual or not, which is
> considered commercial; and (4) a party to the agreement is not an American citizen[.]

*Balen*, 583 F.3d at 654-55 (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir.

2005)). However, the court will not enforce an arbitration agreement if it is "null and void,

inoperative or incapable of being performed." *Id*. at 654 (quoting *Mitsubishi Motors*, 473 U.S. at

619 n.3); United Nations Convention on the Recognition and Enforcement of Arbitral Awards,

art. II(3), Dec. 29, 1970, 21 U.S.T. 2517 [hereinafter Convention].

### B. Jurisdictional Prerequisites

According to the Contract for Employment as Crew Member submitted by Dongwon,

Yang executed an employment contract with Majestic Blue on March 23, 2010. ECF No. 109-1.

Dongwon signed the contract as Majestic Blue's representative. Under this contract, Yang was to

serve as the Chief Engineer on board the F/V *Majestic Blue* for a term of eighteen months.

During the course of his employment, Yang perished on board when the F/V *Majestic Blue* sank

on June 14, 2010.

Paragraph 8 of the employment contract provides:

- 6 -

8. <u>Arbitration/Choice of Law</u>. It is specifically agreed that any and all disputes or claims of any nature arising out of, or relating to, this employment agreement or the employee's employment aboard this Vessel shall be subject to mandatory binding arbitration. Any such arbitration shall occur in, and be subject to the rules of arbitration of, the country of the Crew Member's nationality as established by his/her current passport. It is intended that this arbitration clause be construed broadly to incorporate any and all claims that can conceivably be arbitrated, including claims for death, personal injury, wages, discrimination, or harassment. Any claims subject to this clause will be governed by the substantive law of the country of the crew member's nationality.

Any and all claims or lawsuits of any nature arising out of, or relating to, this employment agreement or the employee's employment aboard this Vessel shall be brought within six (6) months' time. This provision is intended to be all inclusive and includes claims for wages, personal injury, death, discrimination, harassment, or any such claims that employee may have arising out of, or related to, his employment and this employment agreement.

ECF No. 109-1.

Of the four jurisdictional prerequisites, only the first is in dispute. The employment

contract submitted by Dongwon provides for arbitration in the country of Yang's nationality,

South Korea, which acceded to the Convention in 1973. The submitted agreement arises out of a

legal relationship that is considered commercial. *See Rogers*, 547 F.3d at 1155 (finding that

employment contracts of seafarers arise out of legal relationships which are considered

commercial). And Yang was not an American citizen.

Plaintiffs argue that there was no agreement to arbitrate because Dongwon has not

established the purported employment contract's authenticity and there was no meeting of the

minds concerning the essential terms of the purported employment contract, including the

arbitration provision. Pls. Objection at 3–4, ECF No. 88.

### 1. Authentication

Rule 902(12) of the Federal Rules of Evidence provides that certified foreign records of a

regularly conducted activity are self-authenticating if a custodian or other qualified person

certifies that the requirements of Fed. R. Evid. 803(6)(A)–(C) are met. Rule 803(6), in turn,

requires that:

- 7 -

1    (A) the record was made at or near the time by—or from information transmitted by—
     someone with knowledge;
2    (B) the record was kept in the course of a regularly conducted activity of a business,
     organization, occupation, or calling, whether or not for profit;
3    (C) making the record was a regular practice of that activity[.]

4    Fed. R. Evid. 803(6)(A)–(C).

5         In his second amended declaration, Dongwon employee Sang Jin Park certifies that the

6    submitted employment contract was made at or near the time of the events recorded therein by,

7    or from information transmitted by, someone with knowledge of the events; the contract was

8    kept in the course of regularly conducted business activity by Dongwon; and the making of the

9    contract was a regular practice of that activity. *See* Decl., ECF No. 109-1.

10        Although Plaintiffs question the fact that Dongwon has not presented testimony of the

11   employee who signed the contract, Pls. Objection at 3, the court finds that the second amended

12   declaration establishes that Sang Jin Park is a "custodian or another qualified person" sufficiently

13   familiar with the process by which the record was made and kept. Accordingly, the submitted

14   contract has been authenticated under Rule 902(12).[1]

15                    **2.   Meeting of the Minds**

16        Plaintiffs contend that because there was no meeting of the minds, no agreement to

17   arbitrate exists. Plaintiffs argue there could not have been a meeting of the minds concerning the

18   agreement because: Yang had little or no time to consider the agreement, have it translated to his

19   native language (Korean), or negotiate its terms; the agreement was in English and Yang could

20   not read or understand English; the agreement called for the name of the translator to be inserted

21   for the translation rather than the word "KOREAN"; and there was no translation of the

22   agreement into Korean by Dongwon or Majestic Blue. Pls. Objection at 4, ECF No. 88.

23   --------

24   [1] As Plaintiffs had actual notice of Dongwon's intent to rely on the submitted employment contract and sufficient
     opportunity to challenge the authenticity of said contract, and given that Mr. Park's certification would subject him
     to criminal penalty in South Korea, where the certification was signed, the requirements of Rule 902(12) have been
     satisfied.

1  Federal courts "apply ordinary state-law principles[2] that govern the formation of

2  contracts" to determine the existence of an arbitration agreement. *Nguyen v. Barnes & Noble*

3  *Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514

4  U.S. 938, 944 (1995)). One fundamental principle of contract is "that '[m]utual manifestation of

5  assent, whether by written or spoken word or by conduct, is the touchstone of contract.'" *Id.*

6  (alteration in original) (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir.

7  2002)). "Ordinarily, one who accepts or signs an instrument, which on its face is a contract, is

8  deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it.

9  If he cannot read, he should have it read or explained to him." *Randas v. YMCA of Metro. L.A.*,

10  17 Cal. App. 4th 158, 163 (Cal. Ct. App. 1993). *See also Soto v. State Indus. Prods., Inc.¸* 642

11  F.3d 67, 78 (1st Cir. 2011) ("[I]t is a general and well established principle of contract law that

12  'one who is ignorant of the language in which a document is written, or who is illiterate,' may be

13  bound to a contract by negligently failing to learn its contents."); *Morales v. Sun Constructors,*

14  *Inc.*, 541 F.3d 218, 222 (3d Cir. 2008) ("In the absence of fraud, the fact that an offeree cannot

15  read, write, speak, or understand the English language is immaterial to whether an English-

16  language agreement the offeree executes is enforceable.").

17  Accordingly, the fact that Yang could not read or understand English and Plaintiffs

18  allegations that the employment contract was not translated into Korean,[3] without more (e.g.,

19  finding of fraud), do not establish that there was no mutual assent such that Yang was not bound

20

21  ---

[2] No party has asked the court to apply any state law other than Guam. As the Guam Code provisions relating to contracts were adopted from the California Civil Code, the court also draws from California contract law.

22  [3] Plaintiffs have not established that the contract was not read to Yang in his native language of Korean. They call attention to the paragraph above the signature of the Dongwon employee, which "called for the name of the

23  individual translator who translated the document to be inserted rather than the word 'KOREAN.' The fact that this error was made indicates that neither Park Jin Young, Mr. Yang, nor any alleged translator, if there was one,

24  understood English well enough to comprehend what the document called for or its essential terms." Pls. Opp'n at 17, ECF No. 45. The court does not believe this error necessarily means that the contract was not read to Yang in Korean or that the translator did not comprehend the terms of the contract.

- 9 -

1 by the contract. Yang signed[4] the employment contract, and pursuant to well-established

2 principles of contract law, he assented to its terms despite any alleged lack of understanding.

3       Although Plaintiffs contend that Yang had little or no time to consider the agreement or

4 negotiate its terms, there is nothing in the record to support these contentions. The fact that the

5 employment contract is dated March 23, 2010 and the crew list indicates Yang was in Shanghai,

6 China on March 24, 2010 does not demonstrate that Yang did not have sufficient time to

7 consider the contract as there is nothing in the record regarding when the terms of the contract

8 were first presented to Yang for his consideration. Plaintiffs do not refer to anything in the record

9 to support their assertion that Yang was not able to negotiate the terms of the employment

10 contract.

11       Based on the foregoing, the court finds that there was mutual assent and that a contract

12 was formed. Accordingly, there is an agreement in writing within the meaning of the

13 Convention, and the four jurisdictional prerequisites are satisfied.

14     **C. Public Policy**

15       Since the four jurisdictional prerequisites are satisfied, the court must compel arbitration

16 unless it finds that the arbitration agreement is "null and void, inoperative or incapable of being

17 performed." Convention art. II(3).

18       Plaintiffs contend that the arbitration clause is null and void as against public policy

19 because it would eradicate Plaintiffs' statutory Jones Act remedies by requiring them to proceed

20 under Korean law and Korean arbitration procedure and would bar Plaintiffs from any arbitration

21 award whatsoever by shortening the time period to bring any claim to just six months after the

22 incident. Pls. Opp'n at 23, ECF No. 45. Plaintiffs argue that since there is a substantial likelihood

23 that they will not receive any award in arbitration, which in turn would prevent a court from

24

---

[4] Plaintiffs do not argue that the signature on the submitted employment contract is not Yang's.

- 10 -

1  reviewing the award on public policy grounds at a later date, the public policy argument should

2  be considered in this instance. Pls. Objection at 6, ECF No. 88.

3  The Convention creates two stages of litigation: compelling arbitration pursuant to the

4  agreement (governed by Article II) and confirming subsequent arbitral awards (governed by

5  Article V). Under Article II, courts must compel arbitration unless they find that the arbitration

6  agreement is "null and void, inoperative or incapable of being performed." Convention art. II(3).

7  Under Article V, courts may refuse recognition and enforcement of an arbitral award if, *inter*

8  *alia*, it "would be contrary to the public policy of that country." *Id*. art. V(2)(b).

9  Multiple courts of appeals have interpreted Article II strictly and held that courts may not

10  consider public policy arguments at the arbitration enforcement stage. *See Aggarao v. MOL Ship*

11  *Management Co., Ltd.*, 675 F.3d 355, 373 (4th Cir. 2012) (not entitled to interpose public policy

12  defense until the arbitration award enforcement stage); *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d

13  1257, 1276 (11th Cir. 2011) (null and void defense limited to standard breach-of-contract

14  defenses such as fraud, mistake, duress, and waiver that can be applied neutrally on an

15  international scale); *DiMercurio v. Sphere Drake Ins.,* PLC, 202 F.3d 71, 79 (1st Cir. 2000) (null

16  and void clause under the Convention limited to standard breach-of-contract defenses and citing

17  with approval case rejecting expansive interpretation of null and void to include public policy);

18  *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir. 1992) (null and void

19  exception under the Convention should be narrowly construed and Article V specifically

20  provides for relief when enforcement of an award in violation of public policy is sought).

21  However, the Ninth Circuit has not addressed this issue directly. In two cases involving

22  Jones Act seamen employment agreements with arbitration clauses subject to the Convention,

23  the Ninth Circuit addressed the merits of the plaintiffs' public policy arguments at the arbitration

24  enforcement stage without any analysis on whether it was proper to do so at that stage of

- 11 -

litigation. *See Balen v. Holland America Line, Inc.*, 583 F.3d 647, 654 (9th Cir. 2009); *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1158–59 (9th Cir. 2008). In both cases the Ninth Circuit declined to invalidate the arbitration agreements on public policy grounds.

The Supreme Court has "expressed a willingness to invalidate, on 'public policy' grounds, arbitration agreements" wherein "choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies[.]" *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2310 (2013); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). This "effective vindication" exception originated as dictum in *Mitsubishi Motors*, which involved an agreement subject to the Convention. Although subsequent Supreme Court cases have acknowledged the existence of the effective vindication exception, none have applied it to invalidate the arbitration agreement at issue. *Italian Colors*, 133 S. Ct. at 2310.

In *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, the Supreme Court enforced an arbitration provision which provided that disputes "shall be referred to arbitration in Tokyo by the Tokyo Maritime Arbitration Commission" and that the contract "shall be governed by the Japanese law." 515 U.S. 528, 531 (1995). In declining to invalidate the arbitration provision pursuant to the effective vindication exception, the Court relied, in part, on the fact that the district court had "retained jurisdiction over the case and 'will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the…laws has been addressed.'" *Id*. at 540 (quoting *Mitsubishi Motors*, 473 U.S. at 638). The Court stated, "Were there no subsequent opportunity for review *and* were we persuaded that 'the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies . . . , we would have little hesitation in condemning the agreement as against public policy.'" *Id*. (emphasis added) (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19).

- 12 -

1  Plaintiffs argue that the arbitration clause's requirement that any claim be brought within

2  six months will result in the arbitrator declining to hear their case, which would deprive this

3  court of the opportunity to review an award on public policy grounds at a later date. However,

4  both Dongwon and Majestic Blue have stated on the record that they will not raise the six-month

5  limitation period as a defense in arbitration.

6  Based on *Vimar*'s reliance on the opportunity of review at the award enforcement stage

7  and the narrow construction of the null and void clause of Article II by courts of appeals that

8  have directly addressed this issue, the court finds that Plaintiffs' public policy defense is

9  premature as the court is able to retain jurisdiction over this case to ensure review at the award

10  enforcement stage.

11  **D.  Dongwon's Right to Compel Arbitration**

12  Plaintiffs contend that Dongwon, as a nonsignatory to the contract, cannot compel

13  Plaintiffs to arbitrate their claims based on the doctrine of equitable estoppel. Pls. Objection at 6,

14  ECF No. 88. Relying on *Murphy v. DirectTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013), Plaintiffs

15  argue that because their claims are not intimately founded in and intertwined with the purported

16  employment contract, they should not be equitably estopped from litigating their claims against

17  Dongwon. *Id.* at 7–11.

18  The Ninth Circuit has explained that a nonsignatory to an arbitration agreement may

19  compel arbitration "if the relevant state contract law allows the [nonsignatory] to enforce the

20  agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). There is no

21  Guam[5] case that discusses the equitable estoppel doctrine in the arbitration context, but the

22  Supreme Court of Guam has recognized that "Guam's equitable estoppel doctrine was adopted

23  from the California Civil Procedure law." *Mobile Oil Guam, Inc. v. Lee*, 2004 Guam 9 ¶ 24.

24

---

[5] No party has asked the court to apply any state law other than Guam.

- 13 -

Accordingly, the court will look to California contract law to determine whether Dongwon, as a nonsignatory, can compel arbitration.

Under California law, a nonsignatory may enforce an arbitration agreement if equitable estoppel applies. Equitable estoppel applies in two limited circumstances:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

*Kramer*, 705 F.3d at 1128–29 (quoting *Goldman v. KPMG LLP,* 173 Cal. App. 4th 209, 219–221, (Cal. Ct. App. 2009)) (internal citations omitted).

In the first circumstance, "[e]quitable estoppel applies only if the plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory defendant." *Id*. at 1129 (quoting *Goldman*, 173 Cal. App. 4th at 229–30). In other words, "the correct analysis is whether Plaintiffs would have a *claim* independent of the existence" of the contract containing the arbitration clause. *Id*. at 1131 (emphasis in original).

Here, Plaintiffs have alleged four claims: (I) Survival Action for Negligence for Pre-Death Pain and Suffering Under the Jones Act; (II) Wrongful Death Under the General Maritime Law; (III) Wrongful Death Under the Death on the High Seas Act; and (IV) Wrongful Death Under the Jones Act. ECF No. 1. Although Plaintiffs' Jones Act claims are dependent upon a finding of an employer-employee relationship, the claims are independent of the existence of a written employment contract since there can be an employer-employee relationship without such a contract. *See Glynn v. Roy Al Boat Mgmt. Corp.*, 57 F.3d 1495, 1499 (9th Cir. 1995), abrogated on other grounds by *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009) ("While there is no settled set of criteria for determining whether a Jones Act employment relationship exists, the

- 14 -

Supreme Court has indicated that '[o]ne must look at the venture as a whole. Whose orders

controlled the master and the crew? Whose money paid their wages? Who hired the crew?

Whose initiative and judgment chose the route and the ports?'") (quoting *Cosmopolitan Shipping*

*Co. v. McAllister*, 337 U.S. 783, 795 (1949)). The Jones Act claims are not "intimately founded

in" Yang's employment contract and do not rely upon the existence of the contract.

It is well settled that general maritime law imposes duties to avoid unseaworthiness and

negligence and the Supreme Court has recognized general maritime law actions for wrongful

death predicated on unseaworthiness and negligence. *See Norfolk Shipbuilding & Drydock Corp.*

*v. Garris*, 532 U.S. 811 (2001). Plaintiffs' general maritime law wrongful death claim is not

"intimately founded in" Yang's employment contract and does not rely upon the existence of the

contract.

The Death on the High Seas Act ("DOHSA") reads in relevant part:

When the death of an individual is caused by wrongful act, neglect, or default occurring
on the high seas beyond 3 nautical miles from the shore of the United States, the personal
representative of the decedent may bring a civil action in admiralty against the person or
vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse,
parent, child, or dependent relative.

46 U.S.C. § 30302. Plaintiffs' DOHSA claim based on unseaworthiness is a statutory claim that

is not "intimately founded in" Yang's employment contract and does not rely upon the existence

of the contract.

Even in the second circumstance, "allegations of substantially interdependent and

concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the

allegations of interdependent misconduct must be founded in or intimately connected with the

obligations of the underlying agreement." *Goldman*, 173 Cal. App. 4th at 219. Here, Plaintiffs'

allegations of Defendants' interdependent misconduct (i.e., negligence and providing an

- 15 -

1    unseaworthy vessel) are founded in obligations imposed by law rather than obligations imposed

2    by Yang's employment contract.

3         Based on the foregoing, Dongwon has not established that Plaintiffs must rely on the

4    terms of Yang's written employment contract in asserting their claims, that the claims are

5    intimately founded in and intertwined with the underlying contract, or that Plaintiffs' allegations

6    of Defendants' interdependent misconduct are founded in or intimately connected with the

7    obligations of the employment contract. As the doctrine of equitable estoppel does not apply and

8    Dongwon cannot enforce the arbitration clause in Yang's employment contract, the court

9    **DENIES** Dongwon's Motion to Dismiss and Compel Arbitration.

10        **E.  Majestic Blue's Right to Compel Arbitration**

11        Plaintiffs contend that Majestic Blue waived any right it had to arbitration through its

12   conduct in the Limitation Action directed at Plaintiffs. Pls. Objection at 14, ECF No. 88.

13   Plaintiffs argue that their participation in the Limitation Action was not minimal and thus, they

14   suffered prejudice. Plaintiffs direct the court's attention to the following: they were a party to the

15   stipulation submitted on October 30, 2013 that allowed the Magistrate Judge to proceed to trial

16   "on the papers"; they responded to Majestic Blue's interrogatories and requests for production;

17   they participated in the pretrial conference; and they filed a ninety-eight-page Proposed Findings

18   of Fact and Conclusions of Law. *Id*. at 15.

19        The Ninth Circuit has recognized that because "[w]aiver of a contractual right to

20   arbitration is not favored…any party arguing waiver of arbitration bears a heavy burden of

21   proof." *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013) (quoting *Fisher v.*

22   *A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). Accordingly, "facts must be

23   viewed in light of the strong federal policy supporting international arbitration agreements."

24   *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir. 1978). The party

- 16 -

seeking to prove waiver of a right to arbitration must establish: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id*. (quoting *Fisher*, 791 F.2d at 694).

Assuming that Majestic Blue's conduct in the Limitation Action towards Plaintiffs is inconsistent with a right to compel arbitration, Plaintiffs have not established prejudice resulting from said inconsistent acts. Despite their contentions, it appears that Plaintiffs' participation in the Limitation Action was rather limited and they substantially relied on the trial preparation of Claimant Amy Hill, who was involved in the Limitation Action from the beginning and was represented by the same law firm as Plaintiffs. Plaintiffs filed their untimely claim in the Limitation Action on June 14, 2013, and were not permitted to formally participate until October 21, 2013.[6] *In re Majestic Blue*, No. 1:11-cv-00032, ECF Nos. 76, 127. By the time Plaintiffs' claim was filed, the discovery cut-off date had passed and there were approximately two months until the deadline for witness depositions. *Id*., ECF No. 72.

Pursuant to the stipulation submitted on October 30, 2013 in the Limitation Action, the parties agreed that the court could proceed to trial and consider "all Motions, Responses and Replies already filed and those to be filed between now and November 6th in the two related cases (11-cv-00032 and 11-cv-00034)." *In re Majestic Blue*, No. 1:11-cv-00032, ECF No. 141. The parties also stipulated that "all experts who have been deposed in the case for either Majestic Blue, Dongwon, or *Claimant Amy Hill* are qualified to give opinion testimony…" *Id*. (emphasis added). Plaintiffs did not file any substantive motions, responses, or replies in the Limitation Action that could be considered by the court for the trial. Further, it can be inferred from the

---

[6] Plaintiffs have objected to the Magistrate Judge's consideration of Plaintiffs' late entry in the Limitation Action because Majestic Blue's failure to provide notice caused Plaintiffs' late entry. Whatever the reason, Plaintiffs' late entry necessarily limited their participation in the Limitation Action and thus, any resources expended and expenses incurred were similarly limited.

1  language of the stipulation that there were no expert depositions for Plaintiffs. Moreover,

2  Plaintiffs submitted a *joint* proposed findings of fact and conclusions of law along with Claimant

3  Amy Hill.

4       In *Richards v. Ernst & Young, LLP*, the Ninth Circuit recognized that courts have found

5  prejudice in circumstances where discovery was used "to gain information from the other side's

6  case that could not have been gained in arbitration." 744 F.3d 1072, 1075 (9th Cir. 2013).

7  Plaintiffs have responded to both interrogatories and requests for production propounded by

8  Majestic Blue in the Limitation Action. Plaintiffs argue that this type of discovery would be

9  unavailable in a Korean arbitration and thus, Majestic Blue would receive an undue advantage by

10  gaining discovery it would not have been entitled to in arbitration. Pls. Opp'n at 30, ECF No. 75.

11      According to the International Bar Association's Arbitration Guide for South Korea

12  submitted by Plaintiffs, arbitrators should be able to accommodate foreign parties' expectations

13  of a formal document production process in international arbitrations, even though this is not

14  ordinarily expected by Korean parties in domestic arbitrations. Pls. Notice Ex. F, at 11, ECF No.

15  106-7. In such cases, arbitrators "commonly rely on the IBA Rules on the Taking of Evidence in

16  International Arbitration…and make use of Redfern Schedules." *Id*. Although Plaintiffs contend

17  generally that the discovery provided to Majestic Blue in the Limitation Action would not be

18  available in a Korean arbitration, Plaintiffs have not demonstrated that the specific documents

19  they furnished to Majestic Blue could not be gained under the IBA Rules on the Taking of

20  Evidence in International Arbitration, which Korean arbitrators commonly rely upon.

21      Unlike document production, the submitted Arbitration Guide for South Korea does not

22  reference interrogatories. However, the inquiry is not whether particular methods of obtaining

23  information are not available in arbitration, but whether the information itself could not have

24  been gained in arbitration. Plaintiffs have not set forth how the information in their responses to

- 18 -

the interrogatories could not have been gained in arbitration or how they have suffered actual prejudice as a result.

Based on the foregoing and in viewing the facts in light of the strong federal policy supporting international arbitration agreements, Plaintiffs have not carried their heavy burden and established that they suffered prejudice. Accordingly, the court finds that Majestic Blue has not waived its right to compel arbitration and **GRANTS** Majestic Blue's request to compel arbitration.

## IV.    CONCLUSION

Based on the discussion above, the court accepts and adopts in part the Magistrate Judge's Report and Recommendation on this matter. The court **DENIES** Defendant Dongwon Industries Co., Ltd.'s Motion to Dismiss and Compel Arbitration. The court **GRANTS IN PART** Majestic Blue Fisheries, LLC's Joinder to Dongwon's Motion to Dismiss and Compel Arbitration and hereby compels Plaintiffs to arbitrate their claims against Defendant Majestic Blue. The court hereby stays the above-captioned case as to Defendant Majestic Blue.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
        **Chief Judge**
**Dated: Aug 24, 2015**

- 19 -